UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00002-GCM

| ERIC EUGENE LEWIS, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **Order** |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on cross-motions for summary judgment by Plaintiff Eric Eugene Lewis (ECF No. 9) and the Commissioner of the Social Security (ECF No. 13). The matter is now ripe for disposition. For reasons explained in more detail below, the Court will deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and affirm the decision of the Commissioner.

**I. BACKGROUND**

**a. Factual Background**

Plaintiff Lewis applied for disability insurance benefits on December 5, 2019, alleging disability beginning on April 15, 2019. *See* A.R. 15.[1] His application was denied by the Social Security Administration initially, and upon reconsideration. *Id.* Lewis then sought a hearing. An administrative law judge (ALJ) convened a telephonic hearing on May 4, 2021. *Id.* The ALJ issued his decision on June 4, 2021, concluding that Lewis was not disabled within the meaning of the Social Security Act. *Id.* at 27. The ALJ found that Lewis had the following severe impairments: obesity, bipolar disorder, attention-deficit hyperactivity (ADHD), obsessive-

---

[1] Citations to A.R. are to the Administrative Record, found at ECF No. 7.

compulsive disorder (OCD) or anxiety, hypertension, diabetes, and obstructive sleep apnea. *Id.* at 17. The ALJ concluded Lewis had the following residual functional capacity:

> to perform a reduced range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. With normal breaks in an 8-hour workday, he can sit, stand, and walk for 6 hours each. Mentally, he can perform unskilled work performed in 2-hour segments in a non-production pace (meaning non-automated nor conveyor pacing) with infrequent changes in the work setting. He can tolerate no public contact and can have occasional contact with supervisors and coworkers. His work should not involve teamwork or tandem work or involve conflict resolution or crisis management. His work should also not involve driving or operation of heavy machinery.

After determining Lewis's residual functional capacity, the ALJ ultimately decided that there are jobs that exist in significant numbers in the national economy that Lewis can perform. *Id.* at 26-27. Lewis petitioned the Appeals Council for review, which found Lewis did not provide a basis for changing the ALJ's decision. *Id.* at 1. Lewis then sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). ECF No. 1.

### b. The Five-Step Disability Process

The Social Security Administration utilizes a five-step process in determining whether a claimant is disabled within the meaning of the Social Security Act. First, the Commissioner determines whether the claimant is engaging in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). Next, the Commissioner determines whether the claimant has an impairment that is severe, either alone or in combination. *See id.* § 404.1520(a)(4)(ii). At step three, the Commissioner considers whether those impairments are sufficiently severe to qualify automatically for disability under the so-called "Listings." *See id.* § 404.1520(a)(4)(iii). If not, the Commissioner determines the claimant's "residual functional capacity" (RFC), which is defined as "the most [the claimant] can still do despite [his or her] limitations." *Id.* § 404.1545. Using this RFC at step four, the Commissioner determines whether the claimant can still perform

2

Case 3:22-cv-00002-GCM   Document 16   Filed 03/21/23   Page 2 of 8

past relevant work. *Id.* § 404.1520(a)(4)(iv). If not, the Commissioner considers at step five whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(v).

## II. STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner of Social Security may consider only two things: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Although this threshold is not high, it requires "more than a mere scintilla of evidence." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021). In reviewing for substantial evidence, a district court may not "re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (internal citations and quotations omitted) (cleaned up).

## III. DISCUSSION

Plaintiff raises two arguments on appeal. First, he claims that the ALJ inadequately explained how he considered certain medical forms. Second, he challenges the constitutionality of the ALJ's appointment.

### a. Medical Forms

In general, a claimant must prove that he or she is disabled and submit all relevant evidence to support the claim. 20 C.F.R. § 404.1512(a)(1). In evaluating a claim, the Social Security Administration evaluates the following categories of evidence: (1) objective medical evidence, such as medical signs and laboratory findings; (2) medical opinions which are

3

"statement[s] from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in the ability" to perform physical demands, mental demands, other work demands, and the ability to adapt to environmental conditions; (3) other medical evidence, defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments . . . medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis;" (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. § 404.1513. The Administration considers all evidence when deciding whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(3).

When considering medical opinions,[2] the Administration does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, ALJs are required to consider medical opinions according to five factors: supportability, consistency, the relationship with the claimant, specialization, and "other factors." *Id.* § (a), (c). Supportability and consistency are "the most important factors." *Id.* § (b)(2). Supportability refers to the persuasiveness of the opinion based on the objective medical evidence and the explanations of the medical provider. *See id.* § (c)(1). Consistency refers to the relationship between the opinion at issue and the rest of the evidence of record. *See id.* § (c)(2). An ALJ must "explain how [he or she] considered the supportability and consistency for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § (b)(2). The ALJ is ordinarily not required to

---

[2] For claims filed on or after March 27, 2017.

explain how he or she considered the other three factors. *See id.* § (b)(2)–(b)(3). Additionally, the Administration does not find inherently valuable nor persuasive to the issue of disability "statements that [the claimant is or is not] disabled, blind, able to work, or able to perform regular or continuing work." 20 C.F.R. § 404.1520b(c). Such statements provide conclusions on issues that are reserved to the Commissioner. *Id.* The ALJ does not provide an analysis about how he or she considered such evidence. *Id.*

Here, Plaintiff argues that the ALJ failed to explain how he considered the medical opinions of Dr. Locklear, Dr. Klasing, and Dr. Milstein, each of which completed check-the-box forms entitled "Concurrent Disability and Leave Statement of Incapacity/Attending Physician Statement" for the "Sedgwick DTNA Disability and Leave Center." A.R. 378, 419, 427, 441, 477, 534, 541, 551, 1108. On the other hand, the Commissioner argues that these forms are not medical opinions for which the ALJ was required to explain how he considered them, but rather were opinions on an issue reserved to the Commissioner. On each Concurrent Disability and Leave Statement of Incapacity/Attending Physician Statement form, the physician completing the form checked the "Yes" box to Question 1, concluding Plaintiff was "incapacitated for a single continuous period of time due to his . . . medical condition." *Id.* at 378, 419, 427, 441, 477, 534, 541, 551, 1108. Question 8 of the form asked whether Plaintiff was "unable to perform any of his[] job functions due to [his] condition." On each form, the physician completing the form selected "Yes." The form then asked the physician to "identify the job functions the employee is unable to perform." *Id.* at 378, 419, 427,441, 477, 534, 541, 551, 1108. On some of the forms, in response to Question 8, the physician failed to identify any job functions the Plaintiff was unable to perform. *Id.* at 541, 551. On other forms, the physicians provided the following narrative responses: "unable to perform any/all job duties while

5

medications are being adjusted," "attendance due to severity," and "unable to participate in work/job related activities, including interactions inherent in gainful employment." *Id.* at 378, 419, 427, 441, 477, 534, 1108. The remaining portions of the form generally described Plaintiff's medical information, symptoms, observations, and explained his diagnoses and medications. *Id.* It appears that the forms were used by the Sedgwick DTNA Disability and Leave Center to evaluate and approve Lewis for disability leave from his employment. *Id.* at 438, 484, 492, 533, 547-550.

In considering these forms, the ALJ stated:

> I note that the record contains various concurrent disability and leave statements of incapacity that reflect periods of incapacity ranging from April 15, 2019, all the way up to January 27, 2021, at the latest (Exhibits 2F/19, 60, 69, 82, 118, 175, 182, and 192 and 9F/49-50). These forms were meant to indicate periods of incapacity rather than residual functional capacity assessments, and the question of disability is reserved for the Commissioner alone. Therefore, these conclusory statements are not persuasive.

*Id.* at 25.

Here, the ALJ correctly determined that the statements made by Dr. Locklear, Dr. Klasing, and Dr. Milstein on the Sedgwick DTNA Disability and Leave Center forms were conclusions on issues that are reserved to the Commissioner. 20 C.F.R. § 404.1520b(c). First, the conclusions that Plaintiff was incapacitated and unable to perform his job functions are squarely "statements that [he is or is not] disabled . . . able to work, or able to perform regular or continuing work." 20 C.F.R. § 404.1520b(c). The narrative responses "identify[ing] the job functions the [Plaintiff] is unable to perform" fair no better, and also are conclusions reserved to the Commissioner. On the forms that provided any statements, the physicians provided nothing more than conclusory statements that Plaintiff was, in short, unable to work or would have attendance issues. *Oduro v. Kijakazi*, No. 3:21-cv-00078, 2022 WL 1215076, at *9 (M.D. Pa.

6

Apr. 25, 2022) ("[T]he ALJ correctly determined that the counselor's statements regarding excessive absenteeism and an inability to 'work on a regular and sustained basis at least 15% of the time' were 'inherently neither valuable nor persuasive' under the applicable regulations which expressly and exclusively reserve to the Commissioner (or the ALJ as her designee) the ultimate issue of whether the claimant is disabled."); *Richard P. v. Saul*, No. 5:20-cv-00022, 2021 WL 2152566, at *7 (W.D. Va. May 27, 2021) (concluding statement that the plaintiff "was not likely able to be 'gainfully employed' because of his 'very fragile medical status'" was on issue reserved to the Commissioner).

True, as Plaintiff asserts, in completing the forms the physicians made other observations and statements about Plaintiff. For example, Dr. Klasing observed that Lewis had "slowing of thought, poor organization and thoughtfulness, akathetic symptoms, and difficulty staying seated" and Dr. Milstein observed that Lewis had "deficits in ability to function consequent to disregulation [sic] of sleep, disturbances in mood." A.R. 541, 1108. But these vague observations and symptoms, even coupled with the "Yes" checked boxes to Question 1 and Question 8, do not provide opinions from which the ALJ could determine any specific limitations or restrictions in physical, mental, or other demands Plaintiff might face in assessing his RFC; rather, they are more similar to "other medical evidence." 20 C.F.R. § 404.1513; *Stephanie B. v. Kijakazi*, No. 5:20-cv-00060, 2022 WL 909038, at *9-10 (W.D. Va. Mar. 28, 2022) (concluding that statements about the plaintiffs "psychiatric diagnoses, her 'partial response' to prescribed treatment, and her 'somewhat guarded' prognosis were [o]ther medical evidence" not medical opinions); *Richard P.*, 2021 WL 2152566 at *7 (explaining a medical opinion within the regulations would provide something such as plaintiff "would be unable to work for a period of an hour and a half every 4 hours in an 8 hour workday for his nebulizer

7

treatments."). Accordingly, the ALJ did not err in how he considered and explained his analysis of the Concurrent Disability and Leave Statement of Incapacity/Attending Physician Statement forms.

### b. ALJ's Appointment

Plaintiff also argues the ratification of the ALJ's appointment by the then-Acting Commissioner Berryhill was improper. Specifically, Plaintiff contends that Berryhill's tenure under the Federal Vacancies Reform Act ("FVRA") expired before she ratified the appointment of the ALJ, and therefore Berryhill had no authority to take this action. But as the undersigned explained in detail in *Williams v. Kijakazi*, No. 1:21-CV-141-GCM, 2022 WL 2163008 (W.D.N.C. June 15, 2022), Plaintiff's argument is inconsistent with the plain text of the statute, the majority of courts addressing this argument, the legislative history, and the views of the Executive Branch and Legislative Branch. Plaintiff's argument is without merit.

## IV. CONCLUSION

**NOW THEREFORE IT IS ORDERED** Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED**; Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED.**

March 21, 2023

Graham C. Mullen
United States District Judge